IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| DESHANDA CRUSSELL, as<br>Next Friend and Custodial<br>Parent of J.C., a Minor | | PLAINTIFF |
| VS. | CASE NO. 4:06-CV-4042 | |
| ELECTROLUX HOME<br>PRODUCTS, INC. a Foreign Corporation | | DEFENDANT |

## MEMORANDUM OPINION

Before the Court is a Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted, (Doc. 9) filed on behalf of Defendant Electrolux Home Products, Inc. ("Electrolux"). Electrolux argues that Plaintiff Deshanda Crussell's claims–seeking recovery for negligent personal injury to her unborn child–are not recognized by the courts of Arkansas and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Electrolux also filed a Motion for Summary Judgment based on the purported failure of Plaintiff's cause of action. (Doc. 7-1). Plaintiff has responded to Electrolux's motions. (Docs. 26, 28). Electrolux has replied to Plaintiff's responses. (Docs. 34, 35). The Court held a hearing on the matter on April 5, 2007. (Doc. 44). The matter is ripe for consideration.

### I. BACKGROUND

On July 19, 2004, Plaintiff Deshanda Crussell, pregnant with J.C., was involved in an on-the-job accident at her place of employment, Electrolux Home Products, Inc., in DeQueen, Arkansas. On that day, a forklift operating inside the Electrolux facility struck Crussell, causing the forklift's load to fall upon her and bury her underneath between 500 and 700 pounds of boxes. Crussell alleges that the accident caused her severe internal injuries, and that she gave birth to J.C.

prematurely as a result of her injuries.

Immediately after the accident, Crussell sought medical treatment from Electrolux's company nurse, Jean Matthews, R.N. Crussell complained of, *inter alia*, a cut on her left ear and problems with her left shoulder. Later that same day, Crussell sought medical attention at St. Michael's Hospital, where she received treatment for a contusion on her head and for a strain of her back.

Roughly one (1) month after the accident, Crussell underwent emergency abdominal surgery and had a Caesarean Section, resulting in the premature birth of J.C. Plaintiff alleges that J.C.'s premature birth caused the child to suffer from numerous physical and mental ailments, which have necessitated extensive medical treatment, rehabilitation efforts and educational assistance.

Electrolux terminated Crussell on March 1, 2006 for poor work attendance. Plaintiff alleges that J.C.'s premature birth also compromised the child's immune system, causing Crussell to miss work, which lead to her dismissal. In her Complaint, Crussell alleges that Electrolux failed to exercise ordinary care in its operation of the forklift, and that such breach caused the injuries for which this lawsuit seeks recovery.

## II. MOTION TO DISMISS STANDARD

In reviewing Electrolux's Motion to Dismiss, the Court assumes as true all factual allegations of the complaint. *Abels v. Farmers Commodities Corp.,* 259 F.3d 910, 914 (8th Cir. 2001). "However, the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal." *DuBois v. Ford Motor Credit Co.,* 276 F.3d 1019, 1022 (8th Cir. 2002). "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him

to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus, this Court will dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### III. DISCUSSION

Electrolux's Motion to Dismiss requires the Court to answer the question: "Does Arkansas law recognize a cause of action for negligently inflicted prenatal injuries?" Electrolux maintains that it does not. However, Electrolux cites no authority to the Court in support this proposition. Instead, the Court will review Arkansas tort law to resolve the question presented in Electrolux's Motion to Dismiss. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *American Home Assurance Co. v. Major Tool & Mach., Inc.,* 767 F.2d 446, 447 (8th Cir. 1985).

Because the Arkansas Supreme Court has not directly resolved the question of whether it recognizes a cause of action for negligently inflicted prenatal injuries, the Court's task is to predict how the Arkansas Supreme Court would resolve the issue if confronted with it. *Sloan v. Motorists Mut. Ins. Co.,* 368 F.3d 853, 856 (8th Cir. 2004) (citing *Jackson v. Anchor Packing Co.,* 994 F.2d 1295, 1301 (8th Cir.1993)); *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967). In predicting how the Arkansas Supreme Court would address this problem, the Court considers "related state court precedents, analogous decisions, considered dicta, and other reliable sources in an effort to determine what the Supreme Court's decision would be." *Kennedy Building Associates v. Viacom, Inc.*, 375 F.3d 731, 738 (8th Cir. 2004); *Union Pac. R.R. v. Reilly Indus., Inc.,* 215 F.3d 830, 840 (8th Cir.2000); *Salve Regina Coll. v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

3

An examination of fetal rights in Arkansas begins with *Aka v. Jefferson Hosp. Assoc.*, 344 Ark. 627, 641-42, 42 S.W.3d 508 (Ark. 2001). In *Aka*, the Arkansas Supreme Court recognized a wrongful death cause of action brought on behalf of an unborn, viable fetus. 344 Ark. at. 641-42. *Aka* overruled *Chatelain v. Kelley*, 322 Ark. 517, 910 S.W.2d 215 (Ark. 1995), which had held that a viable fetus is not a "person" for the purposes of the Arkansas wrongful death statute. *Chatelain*, 322 Ark. at 525. Subsequent legislative developments, including the 1999 amendment to Ark. Code Ann. § 5-1-102, which included in the definition of "person" for the homicide statute "an unborn child *in utero* at any stage of development" prompted *Aka*'s overruling of *Chatelain*. 1999 Ark. Acts 1273 § 1, eff. July 30, 1999; Ark. Code Ann. § 5-1-102(13)(B)(i)(b); *Aka*, 344 Ark. 641-642. "Unborn child" under the same code section was amended to include "a living fetus of twelve (12) weeks or greater gestation." 1999 Ark. Acts 1273 § 1, eff. July 30, 1999; Ark. Code Ann. § 5-1-102(13)(B)(i)(b). In 2001, the legislature amended the Arkansas Probate code to provide that "a deceased viable fetus" is now "considered a person and decedent so that the probate division of circuit court may have jurisdiction for the administration, settlement, and distribution of the deceased fetus's estate." 2001 Ark. Acts 1775 § 1, eff. Aug. 13, 2001; Ark. Code Ann. § 28-1-118(a). These legislative developments demonstrated that the clear trajectory of Arkansas law favored extending wrongful death protection to viable fetuses and had a liberating effect on the Arkansas Supreme Court, which no longer felt "constrained by the common-law definition of 'person.'" *Aka*, 344 Ark. at 640. Indeed, the Arkansas Supreme Court wrote that "[g]iven this amended definition of 'person,' the legislature plainly affords protection to unborn viable fetuses" and that the "relevance of the legislature's response [to *Chatelain*] by statutorily defining person in the criminal context to include a fetus *cannot be understated*." *Aka*, 344 Ark. at 640 (emphasis added).

*Aka* is also grounded in Amendment 68 to the Arkansas Constitution, which expressed–as the public policy of the State of Arkansas–the importance of protecting the life of "every unborn child from conception until birth, to the extent permitted by the Federal Constitution." Ark. Const. Amend. 68, § 2. Amendment 68 "remains a compelling expression of Arkansas' public policy to the extent it does not violate federal law[1]." *Aka*, 344 Ark. at 640-41.

*Aka* was actually not the first time the Arkansas Supreme Court faced claims brought on behalf of an injured fetus, however. In *Graham v. Sisco*, 248 Ark. 6, 449 S.W.2d 949 (Ark. 1970), plaintiff parents brought a medical malpractice negligence claim on behalf of their minor child for injuries the child sustained in delivery by Caesarean section. The Court did not directly address whether Plaintiffs' claims of negligent non-fatal prenatal injury constituted a valid cause of action in Arkansas, and it is likely that the issue was neither briefed nor argued. However, the Arkansas Supreme Court did hold that the fact that counsel for Plaintiffs did not intend to offer expert medical testimony on the issue of liability *did not preclude establishment of a prima facie case*, nor did the same warrant entry of summary judgment in favor of the Defendant physician. *Graham*, 248 Ark. at 9-10, 449 S.W.2d at 950-51 (emphasis added). Thus, with a negligence cause of action for prenatal injuries before it, the Arkansas Supreme Court had the opportunity in 1970 to declare that no such cause of action existed. Instead, the court's ruling in *Graham* implies that a prima facie claim of this type could be made.

Resolution of the Court's prediction task also requires consideration of the Restatement

---

[1] *Little Rock Family Planning Servs. v. Dalton*, 860 F.Supp. 609 (E.D. Ark. 1994) enjoined enforcement of Amendment 68 and held it unconstitutional. After the Eighth Circuit affirmed, the United State Supreme Court reversed, enjoining Amendment 68 only to the extent that it imposed obligations inconsistent with Title XIX. *See Dalton v. L.R. Family Planning Servs.*, 516 U.S. 474, 476, 116 S.Ct. 1063, 134 L.Ed.2d 115 (1996).

5

(Second) of Torts § 869 Harm to Unborn Child, which provides that "one who tortiously causes harm to an unborn child is subject to liability for the harm if the child is born alive." Restatement (Second) of Torts § 869 (1979). At least 32 jurisdictions recognize a negligence cause of action for non-fatal prenatal injuries if the fetus had reached "viability" before the injury occurred. *See Aka*, 344 Ark. at 638, n. 2; Chase, Roland F., Liability for Prenatal Injuries, 40 A.L.R. 1222 (1971); Coltoff, et al., 43 C.J.S. Infants § 318 Torts: Prenatal Injuries (identifying general rule that "an infant, born alive, generally has a right to maintain an action against another to recover damages for prenatal injuries negligently inflicted.") In addition, the United States Supreme Court has interpreted the Constitution as providing that a state's interest in protecting the life of a fetus begins at viability. *See Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (holding viability as the point when the independent existence of a fetus can be the object of state protection). The Court observes that state wrongful death statutes and negligence causes of action for personal injury serve this important state interest of protecting "persons" and "life" and are to be construed in accordance.

Turning now to surrounding jurisdictions, Louisiana allowed a cause of action for negligently inflicted prenatal injuries to proceed in *Cushing v. Time Saver Stores, Inc.*, 552 So. 2d 730 (La. App. 1989), writ denied, 556 So. 2d 1281 (La. 1990). The facts in *Cushing* are remarkably similar to those in the matter before the Court. *Cushing* involved a pregnant female employee of Time Saver Stores who sustained injuries both to herself and to her unborn child in a work-related accident. The Louisiana Court of Appeals ruled that the child's claims against the employer were not covered by the state's workers' compensation laws, and that the child could bring an action in tort. *Cushing*, 552 So. 2d at 732. *Cushing* is neatly analogous to the matter now before the Court.

6

Historically, the movement towards recognizing a cause of action for negligently inflicted prenatal injuries began with *Bonbrest v. Kotz*, 65 F.Supp. 138 (D. D.C. 1946). *Bonbrest* represented the first departure from the previously controlling and oft-cited opinion of Justice Holmes in *Dietrich v. Inhabitants of Northampton*, 138 Mass. 13 (Mass. 1884). *Dietrich* is famous for its holding that an unborn child is "part of the mother at the time of the injury" (referred to as the "single entity" view) and its denial of a separate cause of action for the unborn child which sustains injury. *Dietrich* and other cases refusing to recognize this cause of action argued that the following considerations counsel against allowing this cause of action: (1) no duty could be owed to a person not yet in existence; (2) problems with reliability of proof and causal connection and (3) dangers of unfounded claims. Current jurisprudential momentum–both nationally and in Arkansas–suggests the first of these considerations is archaic, and the Court possesses intimate familiarity with pretrial and trial procedures for managing the second and third.

Failing to recognize a cause of action for negligently inflicted prenatal injuries places the viable human fetus in the illogical and untenable position of "human being under the civil law, and a non-entity under the common law." *See Bonbrest*, 65 F.Supp. at 140. The following example highlights the effect of the single entity view of *Dietrich* and *Chatelain*: suppose Plaintiff Crussell had been pregnant with twins instead of only J.C., and sustained injury to both viable fetuses simultaneously, killing one of the twins. Under the single entity view, no cause of action could be brought on behalf of the surviving child, while Arkansas provides for protection of the deceased fetus under the wrongful death statute. This result amounts to an absurdity, punishing the hardy infant survivor. The Court concludes that the Arkansas Supreme Court would avoid such an illogical and untenable result. Justice, for Plaintiff Crussell, her minor daughter J.C., and all Arkansans

7

requires this extension of Arkansas negligence law.

## IV. CONCLUSION

Based on the foregoing precedents and authorities, the Court is satisfied that, faced with the same issue, the Arkansas Supreme Court would extend *Aka's* protection of injured fetuses to include those who survive the negligent acts of others. Accordingly, Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted should be and hereby is **DENIED**. The Court's Order of April 2, 2007 (Doc. 43) reserved judgment on Electrolux's Motion for Summary Judgment to the extent it rested on the purported failure of Plaintiff's cause of action. The remainder of Electrolux's Motion for Summary Judgment is now **DENIED**. An order of even date, consistent with this opinion, shall issue.

**IT IS SO ORDERED**, this 10th day of August, 2007.

      /s/ Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge